FILED

**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA** JAN -2 PM 1: 04
CIVIL ACTION NO.

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS FLORIDA

KAILANI CARLSON,

Plaintiff,                                    INJUNCTIVE RELIEF SOUGHT

vs.                                           2: 8 -c v- 1 -FtM- 99 HRM

SUNSHINE VILLAS HOA, INC., ALLAN NIELSEN and
DORIS WALTERS,

Defendants.

_____/

## COMPLAINT

Plaintiff, KAILANI CARLSON (hereinafter "Plaintiff") through the undersigned counsel, hereby files this Complaint and sues SUNSHINE VILLAS HOA, ALLAN NIELSEN and DORIS WALTERS (hereinafter, referred to as "the Defendants"), for declaratory and injunctive relief, attorney fees, expenses, damages including punitive damages and costs (including, but not limited to court costs and expert fees) pursuant to the Fair Housing Act, as Amended U.S.C. § 3601, et seq., §§ 3604(f) and 3613 (hereinafter referred to as "The Act") for the Defendants improper and illegal denial of her request for a reasonable accommodation permitting her Emotional Support Animal to reside at the subject property, for retaliation thereafter including but not limited to false accusations of violations, harassment, and wrongful eviction; and the pendent claim for violation of the Florida Consumer Collection Practices Act for Defendant Doris Walters attempt to collect a debt in violation thereof.

## JURISDICTION AND VENUE

1. This Honorable Court is vested with original jurisdiction over this action pursuant to 28 U.S.C. §1331 and §343 for Plaintiff's claims arising under the Fair Housing Act, 42 U.S.C. § 3613, as this lawsuit is brought under the Fair Housing Act, 42 U.S.C. § 3601, et seq., §§ 3604(f)1 and 3613(a); and the Declaratory Judgment Act, 28 U.S.C. § 2201. The Defendant SUNSHINE VILLAS HOA is a private corporation which operates Sunshine Villas, a housing development governed by 42 U.S.C. § 3601, 3604(f)1, et seq., § 3613. Plaintiff seeks actual and punitive damages along with reasonable attorney's fees and costs pursuant to 42 U.S.C. § 3613.

2. Plaintiff seeks declaratory, injunctive and monetary relief against the Defendants pursuant to 28 U.S.C. §§ 2201 and 2202.

3. Venue is proper in this Court, the Middle District of Florida, pursuant to 28 U.S.C. §1391(b) in that all the events giving rise to the lawsuit occurred in Port Charlotte, Florida.

## PARTIES

4. Plaintiff, KAILANI CARLSON, ("Plaintiff") is sui juris and is a residents of the State of Florida residing in Port Charlotte, Florida. Plaintiff suffers from Post Traumatic Stress Disorder ("PTSD"), Anxiety and Depression Disorder and Insomnia. These Disorders are qualified disabilities under the Americans with Disability Act and the Fair Housing Act and cause impairments which limit the following major life activities: sleeping, concentrating, working and interacting with others. Her disorders are exacerbated by stress. The Social Security Administration has determined that the Plaintiff is disabled.

2

5. Defendant SUNSHINE VILLAS HOA, INC. ("SUNSHINE VILLAS HOA") is a private corporation which manages and operates an apartment complex governed by the Fair Housing Act.   SUNSHINE VILLAS HOA is subject to the provisions and requirements of federal law governing the sale and lease of units at Sunshine Villas.

6. Defendant ALLAN NIELSEN ("Defendant Nielsen" or "NIELSEN") is and has been at all times relevant to this complaint, the Treasurer of SUNSHINE VILLAS HOA. Defendant ALLAN NIELSEN Nielsen is also an agent/representative of SUNSHINE VILLAS HOA.  Accordingly, SUNSHINE VILLAS HOA is vicariously liable for the actions of its agent/representative, Defendant Nielsen

7. Defendant DORIS WALTERS ("Landlord" or "Defendant Walters" or "WALTERS") is the Vice President of SUNSHINE VILLAS HOA and the also landlord of the Subject Property.  Accordingly, Ms. Walters is an agent/representative of SUNSHINE VILLAS HOA and SUNSHINE VILLAS HOA is vicariously liable for the actions of its agent/representative.  Ms. Walters has violated her duties under the Fair Housing Act by denying the request for a reasonable accommodation to permit Plaintiff's ESA to reside at the Subject Property and has also participated in retaliatory behavior in violation of the Florida Consumer Collection Practices Act.

## STATUTORY AND REGULATORY FRAMEWORK

8. Congress created the Fair Housing Act, 42 U.S.C. § 3601 et seq., as amended in 1988, to ensure that individuals are not discriminated against on the basis of, among other things, handicap or disabled status in the sale or rental of housing. Discrimination can include denial of the sale or rental of a property based on a person's disability.   Maintaining

3

policies which exclude and effectively deny disabled persons of equal access to residential lease or purchase based on the applicant/ resident's disability. SUNSHINE VILLAS HOA, as operator of a multiple-family housing complex, and Defendant Nielsen, as agent thereof, and Defendant Doris Walters as agent thereof and as landlord are subject to the Fair Housing Act and are required to comply with the Fair Housing Act.

9. When enacting the ADA in 1990, Congress found, among other things, that:

(i)    some 43,000,000 Americans have one or more physical or mental disabilities, and this number shall increase as the population continues to grow older;

(ii)    historically, society has tended to isolate and segregate individuals with disabilities and, despite some improvements, such forms of discrimination against disabled individuals continue to be a pervasive social problem, requiring serious attention;

(iii) discrimination against disabled individuals persists in such critical areas as employment, housing, public accommodations, transportation, communication, recreation, institutionalization, health services, voting and access to public services and public facilities;

(iv)    individuals with disabilities continually suffer forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and regulation to lesser services, programs, benefits, or other opportunities; and

(v)    the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our country is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non- productivity.

42 U.S.C. §12101(a)(1)-(3), (5) and (9).

10. Congress explicitly stated that the purpose of the ADA was  to:

(i)    provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(ii)    provide, clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and,

4

(iii)     invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced on a daily by people with disabilities.

11. Thereafter The Act was amended to include protections for persons with disabilities.  The Act, at 42 U.S.C. § 3604 as amended prohibits discrimination in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of that buyer or renter, a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or any person associated with that buyer or renter.

12. The Act defines persons with a disability to mean those individuals with mental or physical impairments that substantially limit one or more major life activities including but not limited to: caring for oneself... sleeping..concentrating, interacting with others and working. The term mental or physical impairment may include conditions such as ... emotional illness.

13. The Fair Housing Act also protects persons who have a record of such an impairment, or are regarded as having such an impairment.

14. PTSD is a widespread disability and disease.  It is estimated that 7 to 8 percent of the population will suffer from some form of PTSD at some point in their lives. About 8 million adults have PTSD during a given year. About 10 out of 100 women develop PTSD, many as a result of trauma. Persons who are directly exposed to trauma are more likely to develop PTSD. PTSD can affect persons in various ways. A common effect of PTSD is hyperarousal which results in the following: difficulty sleeping, trouble concentrating, fear and anxiety by surprises and fear of public places.

5

## FACTS

15. On or about 2002, Plaintiff was diagnosed with PTSD. Plaintiff is under the supervision of medical professionals for her disorders who monitor her and provide therapy, prescriptions and instruction.

16. Plaintiff was determined permanently disabled on or about April 22, 2009.

17. Due to her disability, Plaintiff is forced to live on public assistance including SSD.

18. One of Plaintiff's primary concerns in life is providing a safe home for her daughter who is thirteen years of age.

19. After searching for a home within a specific school zone near the support of family, Plaintiff found her home at Sunshine Villas.

20. In April of 2017, due to her disorders, her doctors suggested she obtain an Emotional Support Animal "ESA".

21. Accordingly, she took steps to obtain and register an ESA that temporarily resided at her parent's home during that process.

22. On or about September 12, 2017 after receiving the prescription, Plaintiff discussed same with Defendant Walters providing copies of the request and doctor's letters to Defendant Doris Walters. She provided documentation to Defendant Walters as referenced in Exhibit A & B. Please see attached a copy of the doctor letter prescribing the ESA to Plaintiff as Exhibit A. Please see attached a copy of Plaintiff's letter to Defendant Walters attached as Exhibit B.

23. During the meeting, Defendant Walters did not object to the ESA and failed to provide

any negative feedback and instead providing positive feedback instructing Plaintiff to pick up after the ESA.

24. Much to her surprise, Plaintiff received a letter from Defendant Walters dated September 26, 2017 which alleged that Walters "was kinda at a loss as to why you want a dog... I spoke to our Manager ... and know he will fight it. There are just too many people who live there to allow a dog. If you allow one then lots will want dogs... most all other owners would be against allowing you to have a dog." Please see attached a copy of the letter for Defendant Walters attached as Exhibit C.

25. Defendant Walters asserted that management would not permit the ESA, omitting the fact that she herself was the Vice President of the HOA.

26. Needless to say, Plaintiff was confused and distressed upon receiving Exhibit C. She was afraid and concerned that Walters was lying and misrepresenting. She wanted to avoid unnecessary confrontation that could exasperate her condition.

27. Thereafter, Walters began to text Plaintiff for several days harassing her about the ESA and threatened eviction. Plaintiff advised Walters that the eviction attempts were in violation of the law and that she was permitted to have the ESA.

28. Plaintiff obtained a second letter from her doctor regarding the medical need for the ESA and provided same to WALTERS. Please see Doctor Letter No. 2 attached as Exhibit D.

29. In retaliation WALTERS sent Plaintiff a Final Notice to Vacate ordering the Plaintiff vacate the premises by November 1, 2017. received by Plaintiff on October 12, 2017. Please see a copy of the Final Notice attached hereto as Exhibit E.

30. As a matter of course, Plaintiff paid her monthly rent in advance on October 13, 2017 for

the rental period from October 15, 2017 to November 15, 2017.

31. On October 16, 2017, Plaintiff received a letter titled dated October 13, 2017 which enclosed the Final Notice and alleged to enclose the October-November rent payment. Please see attached a copy of the October 13, 2017 Notice to Vacate  attached hereto as Composite Exhibit E.

32. However, the rent check was not enclosed as alleged in the letter.

33. Needless to say, Plaintiff was greatly distressed and concerned regarding the potential loss of her home.  For this reason she contacted undersigned counsel and retained counsel to assist with the discrimination she was receiving from Defendant Walters and SUNSHINE VILLAS HOA.

34. Thereafter Plaintiff received a second copy of the October 13th letter with the Final Notice and rent check enclosed.

35. Thereafter, Defendant Walters handed Plaintiff's thirteen year old daughter a Three Day Notice to Pay Rent or Deliver Possession attempting to collect a debt not owed as Walters received Plaintiff's October-November Rent Payment. Please see attached a copy of the Three Day Notice attached as Exhibit F.

36. Immediately thereafter, Plaintiff provided a second payment to Walters in the form of a cashier's check with a letter advising her again of the illegal eviction attempt. A copy of the letter and check are attached hereto as Exhibit G.

37. By and through undersigned counsel, Plaintiff then contacted Defendant Nielsen to request copies of SUNSHINE VILLAS HOA policies, procedures or information necessary to request the reasonable accommodation of permitting an Emotional Support

8

Animal to reside at the Subject Property. Defendant Nielsen refused to provide the policy, procedure or information necessary for requesting a reasonable accommodation directly from SUNSHINE VILLAS HOA. Instead of providing same, NIELSEN claimed that there was no set procedure policy or information to be provided only that many questions would need to be asked of the resident before a pet such as a dog could be permitted on the property.

38. Despite attempts by Plaintiff to explain that the law did not permit Defendants to require a lengthy or detailed inquiry in order for a resident to request this information or accommodation, Defendant Nielsen refused and directed Plaintiff to contact their Counsel.

39. Accordingly, Plaintiff prepared for filing of the federal lawsuit to protect her rights under the FHA and the FCCPA as it related to her continued lawful residency with her ESA at the Subject Property. Defendants Counsel was contacted and notified of the violations and requested accommodation and presuit preparation.

40. As a result of Defendants' violations of The Fair Housing Act, and of Defendant Walters violation of the Landlord Tenant Act, Plaintiff has suffered pain, emotional distress, embarrassment, and costs associated with seeking to resolve the matter prior to seeking Court intervention.

41. Moreover, Plaintiff has been diligently searching for alternate housing but has been unable to find comparable housing in her daughter's school district causing greater distress and worry.

42. Most recently, Plaintiff had an episodic syncopic episode where she fainted due to

extreme emotional distress. The episode occurs when persons with Plaintiff's diagnosis are under great distress. She has not experienced one in many years due to her diligent efforts to seek therapy, treatment and wellness.

43. Despite Plaintiff's attempts to resolve the matter without litigation, Defendants refused to compensate Plaintiff for the damages incurred as a result of the illegal and discriminatory actions.

## COUNT I- DISPARATE TREATMENT- DENYING OR MAKING A DWELLING UNAVAILABLE IN VIOLATION OF 42 U.S.C. § 3604(f)(1)

44. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 43 above as though fully set forth herein.

45. Pursuant to 42 U.S.C. § 3604(f)(1), it is unlawful "to discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of  (A) that buyer or renter, (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or (C) any person associated with that buyer or renter.

46. Under 42 U.S.C. § 3604(f)(9), a limited exception to this provision exists allowing a landlord to reject "an individual whose tenancy would constitute a direct threat to the health or safety of other individuals or whose tenancy would result in substantial physical damage to the property of others."

47. In determining whether an individual poses a direct threat to the health or safety of others, a public entity must make an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence, to ascertain: the nature, duration, and severity of the risk; the probability that

10

the potential injury will actually occur; and whether reasonable modifications of policies, practices, or procedures or the provision of auxiliary aids or services will mitigate the risk. 28 CFR § 35.139.

48. Defendant made no individualized assessment about whether Plaintiff's ESA was a direct threat to the health or safety of others and failed to consider: (1) the nature, duration, and severity of the risk of injury; (2) the probability that injury will actually occur; and (3) whether there are any reasonable accommodations that will eliminate the direct threat.

49. Defendants had no objective evidence that Plaintiff or Plaintiff's ESA posed a direct threat to persons or property, as is required to trigger the "direct threat" exception.

50. Defendant failed to make even the most minimal of investigation as to the reasonable accommodation of the ESA.

51. Defendants' actions were based on unsubstantiated stereotypes about persons with disabilities and ESAs in general.

52. Defendants did not request any documentation whatsoever regarding Plaintiff's ESA or disability. Defendants ignored and refused to consider the documents provided by Plaintiff and in fact refused to provide the process, procedure, or information necessary to make the request for reasonable accommodation of the ESA.

53. Defendants' had a direct animus towards Plaintiff solely because of her disability and reasonable accommodation request for an ESA.

54. Defendants did not consider the recommendations of Plaintiff's doctors or request any documentation whatsoever.

55. Defendant's treated Plaintiff differently solely because of her disability and request for a

reasonable accommodation  and did not want her residing at Sunshine Villas after making said request.

56. Defendants threatened Plaintiff and her daughter with eviction solely based upon Plaintiff's disability and request for a reasonable accommodation.

57. The Fair Housing Act does not allow for exclusion of individuals based upon fear, speculation, or stereotype about a particular disability or persons with disabilities in general.

58. At all times relevant, Defendants had actual knowledge of Plaintiff's disability her request for a reasonable accommodation prior to the eviction demand.

59. Such attempted eviction by Defendants were motivated by a discriminatory purpose and in total disregard of Plaintiffs' rights and indifferent to the disability and needs of Plaintiff.

60. Defendants' attempted to make housing unavailable to Plaintiff and her daughter because of her disability and her related request for a reasonable accommodation in violation of 42 U.S.C. § 3604(f)(1).

61. As a direct and proximate result of Defendant's discrimination Plaintiff has suffered irreparable loss and injury including, but not limited to actual damages, humiliation, emotional distress, and the threat of deprivation of the right to equal housing opportunities regardless of disability.

WHEREFORE, Plaintiff, KAILANI CARLSON, demands judgment against Defendants, to declare that the actions of the Defendants violated the Fair Housing Amendments Act, the Florida Fair Housing Act by discriminating against persons with disabilities; and award Plaintiffs

injunctive relief to prohibit such discriminatory actions, and extensive training on the requirements of the fair housing act, as well as compensatory and punitive damages, and their attorneys' fees and costs as well as any other such relief as this Court deems just and equitable.

### COUNT II - FAILURE TO REASONABLY ACCOMMODATE IN VIOLATION OF 42 U.S.C. § 3604(f)(3)

62. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 43 above as though fully set forth herein.

63. Defendants were personally involved, and/or had authorized, and/or ratified each and every discriminatory act and denial of accommodation for Plaintiff herein.

64. At all times material, Defendants had actual knowledge that Plaintiff has a psychological disability and regarded her as a person with a disability.

65. At all times material, Defendant Walters was advised by Plaintiff of her need and prescription for an ESA and documentation in support thereof.

66. Defendants refused the request and proceed to act in a harassing and retaliatory manner towards Plaintiff and her daughter thereafter.

67. Pursuant to 42 U.S.C. § 3604(f)(3)(b), it is unlawful to refuse to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling.

68. An individual seeking reasonable accommodations for a disability need not use "magic" words or explicitly mention the words "fair housing act" or "reasonable accommodation". Plaintiff's request to Walters manifested an intention to obtain accommodations to permit her ESA to remain on the Premises could reasonably be construed as a request for accommodations.

13

69. Despite this, Defendants failed to consider Plaintiff's request or whether any reasonable accommodation could have been made and solely sought to impose restrictions upon Plaintiff by wrongful eviction.

70. Such accommodation, to permit the ESA would not be an undue financial or administrative burden or a fundamental alteration on Sunshine Villas.

71. At no time did Defendants attempt to discuss the reasonable accommodation request of the ESA with Plaintiff other than to tell her dogs were not permitted on the Premises even after she requested the information, process and procedure for consideration thereof.

72. At no time did Defendants, seek to retain any opinion from a medical professional as to Plaintiff's needs or to consider the professional medical opinion she provided in consideration thereof.

73. Such accommodation was necessary to the equal use and enjoyment of Plaintiff's home and her use and enjoyment of common and public areas of housing.

74. Defendant's failure to address such request and then several days later attempting to wrongfully evict Plaintiff by returning her rent payment and handing a Three Day Notice to her thirteen year old daughter constitutes a denial of the reasonable accommodation request.

75. Defendant's failure to modify its existing policies and practices to accommodate the disabilities of Plaintiff is discriminatory and unlawful.

76. Upon information and belief Defendants conspired to discriminate against Plaintiff after receiving her reasonable accommodation request of the ESA. As such, Plaintiff has included a Spoliation Notice herein.

14

77. Such actions by Defendants were in total and reckless disregard of Plaintiffs rights and indifferent to Plaintiff's disability and needs.

78. Further, as a direct and proximate result of Defendants' discrimination, Plaintiffs have suffered irreparable loss and injury including, but not limited to actual damages, humiliation, emotional distress, and imminent threat of the deprivation of the right to equal housing opportunities regardless of disability.

## COUNT III - VIOLATIONS OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT, FLA. STAT §§ 559.72(7)&(9) *et seq.* FCCPA

75. Plaintiff incorporates by reference paragraphs 1 through 43 of this Complaint as though fully stated herein.

76. Defendant Walters' foregoing acts against Plaintiff constitutes violations of the Florida Consumer Collections Practices (FCCPA) Act FLA. STAT. § 559 et seq.

77. These violations of the Florida Consumer Collections Practices Act were willful as set forth above.

78. In determining the Defendant Walters' liability for any additional statutory damages, the court shall consider the nature of the Defendant's noncompliance with Section 559.72, the frequency and persistence of the noncompliance, and the extent to which the noncompliance was intentional.

79. The FCCPA prohibits a debt collector or creditor from claiming, attempting, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist. See Fla. Stat. §559.72(9).

80. Here, Defendant, Doris Walters repeatedly attempt to evict Plaintiff falsely alleging

Plaintiff's lease was terminated.

81. Despite receiving full payment for Plaintiff's October-November lease payment, Defendant Walters handed Plaintiff's thirteen year old daughter a Three Day Notice to Pay Rent or Deliver Possession attempting to collect a debt not owed in violation of Fla. Stat. §559.72(9).

82. Defendant Walters further violated the FCCPA by willfully engaging in conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family by returning the rent payment, sending the false Notices of Termination and handing the Three Day Notice to Plaintiff in violation of Fla. Stat. §559.72(7).

83. As a result of Defendant Doris Walters violations of Fla. Stat. § 559.72, Plaintiff is entitled to actual damages and for additional statutory damages for the aforementioned violations of the FCCPA in the amount up to $1,000.00 together with court costs and reasonable attorney's fees incurred by the Plaintiff pursuant to Fla. Stat. § 559.77(2).

WHEREFORE, Plaintiffs, KAILANI CARLSON, demands judgment against Defendants and to declare that the actions of Defendants violated the Fair Housing Amendments Act, by discriminating against persons with disabilities and award Plaintiffs compensatory and punitive damages, and her attorneys' fees and costs as well as injunctive relief as follows:

a. That the Court declare that the actions of the Defendants violated the Fair Housing Amendments Act by discriminating persons with disabilities;

b. That the Court enjoin Defendants from discriminating against Plaintiff or any other person, because of because of their disability or need for a reasonable accommodation;

c. That the Court order Defendants to provide a notice to all owners and tenants of all

16

properties they own and operate of their rights under the Fair Housing Act, including their right to have accommodations because of a disability;

d. That the Court order that SUNSHINE VILLAS HOA, INC. instruct all of its employees, agents, independent contractors and/or other persons who deal with the rental or management of any and all housing currently managed and/or controlled by SUNSHINE VILLAS HOA, INC. of the terms of the Court's Order and the Fair Housing Act, Fair Housing Act and implementing regulations;

e. That the Court order that Defendants to maintain for inspection by Plaintiffs and all other tenants or owners at its condominium offices, copies of the Fair Housing Act, Fair Housing Amendments Act and implementing regulations;

f. That the Court enter judgment against Defendants for statutory damages of $1,000 pursuant to FLA. STAT. § 559.77(2) for violations of FLA. STAT § 559.72(7) and (9)

g. That the Court enter an award of reasonable attorney's fees and costs; and

h. That the Court grant any other such relief as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial for all issues so triable.

## SPOLIATION NOTICE

### *Demand for Preservation of Electronically Stored Information*

Plaintiffs demand that you preserve all documents, tangible things and electronically stored information potentially relevant to the issues in this cause. As used in this document, "you" and "your" refers to SUNSHINE VILLA HOA, INC., DORIS WALTERS AND ALLAN NIELSEN and its predecessors, successors, parents, subsidiaries, divisions or affiliates, and their

respective officers, directors, agents, attorneys, accountants, employees, partners or other persons occupying similar positions or performing similar functions. You should anticipate that much of the information subject to disclosure or responsive to discovery in this matter is stored on your current and former computer systems and other media and devices (including personal digital assistants, voice-messaging systems, online repositories and cell phones). Electronically stored information (hereinafter "ESI") should be afforded the broadest possible definition and includes (by way of example and not as an exclusive list) potentially relevant information electronically, magnetically or optically stored as:

- Digital communications (e.g., e-mail, voice mail, instant messaging);
- Word processed documents (e.g., Word or WordPerfect documents and drafts);
- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);
- Accounting Application Data (e.g., QuickBooks, Money, Peachtree data files);
- Image and Facsimile Files (e.g., .PDF, .TIFF, .JPG, .GIF images);
- Sound Recordings (e.g., .WAV and .MP3 files);
- Video and Animation (e.g., .AVI and .MOV files);
- Databases (e.g., Access, Oracle, SQL Server data, SAP);
- Contact and Relationship Management Data (e.g., Outlook, ACT!);
- Calendar and Diary Application Data (e.g., Outlook PST, Yahoo, blog tools);
- Online Access Data (e.g., Temporary Internet Files, History, Cookies);
- Presentations (e.g., PowerPoint, Corel Presentations)
- Network Access and Server Activity Logs;
- Project Management Application Data;
- Computer Aided Design/Drawing Files; and,
- Back Up and Archival Files (e.g., Zip, .GHO)

ESI resides not only in areas of electronic, magnetic and optical storage media reasonably accessible to you, but also in areas you may deem not reasonably accessible. You are obliged to preserve potentially relevant evidence from both these sources of ESI, even if you do not anticipate producing such ESI. The demand that you preserve both accessible and inaccessible ESI is reasonable and necessary. Pursuant to amendments to the Federal Rules of Civil Procedure that have been approved by the United States Supreme Court (eff. 12/1/06), you must

identify all sources of ESI you decline to produce and demonstrate to the court why such sources are not reasonably accessible. For good cause shown, the court may then order production of the ESI, even if it finds that it is not reasonably accessible. Accordingly, even ESI that you deem reasonably inaccessible must be preserved in the interim so as not to deprive the plaintiffs of their right to secure the evidence or the Court of its right to adjudicate the issue. Preservation Requires Immediate Intervention You must act immediately to preserve potentially relevant ESI including, without limitation, information with the earlier of a Created or Last Modified date on or after [DATE] through the date of this demand and concerning: 1. The events and causes of action described in [Plaintiffs' Complaint]; 2. ESI you may use to support claims or defenses in this case; 3. …. 4. …. Adequate preservation of ESI requires more than simply refraining from efforts to destroy or dispose of such evidence. You must also intervene to prevent loss due to routine operations and employ proper techniques and protocols suited to protection of ESI. Be advised that sources of ESI are altered and erased by continued use of your computers and other devices. Booting a drive, examining its contents or running any application will irretrievably alter the evidence it contains and may constitute unlawful spoliation of evidence. Consequently, alteration and erasure may result from your failure to act diligently and responsibly to prevent loss or corruption of ESI. Nothing in this demand for preservation of ESI should be understood to diminish your concurrent obligation to preserve document, tangible things and other potentially relevant evidence. Suspension of Routine Destruction You are directed to immediately initiate a litigation hold for potentially relevant ESI, documents and tangible things, and to act diligently and in good faith to secure and audit compliance with such litigation hold. You are further directed to immediately identify and modify or suspend features of your

19

information systems and devices that, in routine operation, operate to cause the loss of potentially relevant ESI. Examples of such features and operations include:

- Purging the contents of e-mail repositories by age, capacity or other criteria;
- Using data or media wiping, disposal, erasure or encryption utilities or devices;
- Overwriting, erasing, destroying or discarding back up media;
- Re-assigning, re-imaging or disposing of systems, servers, devices or media;
- Running antivirus or other programs effecting wholesale metadata alteration;
- Releasing or purging online storage repositories;
- Using metadata stripper utilities;
- Disabling server or IM logging; and,
- Executing drive or file defragmentation or compression programs.

**Guard Against Deletion**

You should anticipate that your employees, officers or others may seek to hide, destroy or alter ESI and act to prevent or guard against such actions. Especially where company machines have been used for Internet access or personal communications, you should anticipate that users may seek to delete or destroy information they regard as personal, confidential or embarrassing and, in so doing, may also delete or destroy potentially relevant ESI. This concern is not one unique to you or your employees and officers. It's simply an event that occurs with such regularity in electronic discovery efforts that any custodian of ESI and their counsel are obliged to anticipate and guard against its occurrence.

**Preservation by Imaging**

You should take affirmative steps to prevent anyone with access to your data, systems and archives from seeking to modify, destroy or hide electronic evidence on network or local hard drives (such as by deleting or overwriting files, using data shredding and overwriting applications, defragmentation, re-imaging or replacing drives, encryption, compression, steganography or the like). With respect to local hard drives, one way to protect existing data on

20

local hard drives is by the creation and authentication of a forensically qualified image of all sectors of the drive. Such a forensically qualified duplicate may also be called a bitstream image or clone of the drive. Be advised that a conventional back up of a hard drive is not a forensically qualified image because it only captures active, unlocked data files and fails to preserve forensically significant data that may exist in such areas as unallocated space, slack space and the swap file. With respect to the hard drives and storage devices of each of the persons named below and of each person acting in the capacity or holding the job title named below, as well as each other person likely to have information pertaining to the instant action on their computer hard drive(s), demand is made that you immediately obtain, authenticate and preserve forensically qualified images of the hard drives in any computer system (including portable and home computers) used by that person during the period from April 2017 to October 31, 017, as well as recording and preserving the system time and date of each such computer. [Insert names, job descriptions and titles here]. Once obtained, each such forensically qualified image should be labeled to identify the date of acquisition, the person or entity acquiring the image and the system and medium from which it was obtained. Each such image should be preserved without alteration.

### Preservation in Native Form

You should anticipate that certain ESI, including but not limited to spreadsheets and databases, will be sought in the form or forms in which it is ordinarily maintained. Accordingly, you should preserve ESI in such native forms, and you should not select methods to preserve ESI that remove or degrade the ability to search your ESI by electronic means or make it difficult or burdensome to access or use the information efficiently in the litigation. You should additionally

refrain from actions that shift ESI from reasonably accessible media and forms to less accessible media and forms if the effect of such actions is to make such ESI not reasonably accessible.

### Metadata

You should further anticipate the need to disclose and produce system and application metadata and act to preserve it. System metadata is information describing the history and characteristics of other ESI. This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location and dates of creation and last modification or access. Application metadata is information automatically included or embedded in electronic files but which may not be apparent to a user, including deleted content, draft language, commentary, collaboration and distribution data and dates of creation and printing. Be advised that metadata may be overwritten or corrupted by careless handling or improper steps to preserve ESI. For electronic mail, metadata includes all header routing data and Base 64 encoded attachment data, in addition to the To, From, Subject, Received Date, CC and BCC fields.

### Servers

With respect to servers like those used to manage electronic mail (e.g., Microsoft Exchange, Lotus Domino) or network storage (often called a user's "network share"), the complete contents of each user's network share and e-mail account should be preserved. There are several ways to preserve the contents of a server depending upon, e.g., its RAID configuration and whether it can be downed or must be online 24/7. If you question whether the preservation method you pursue is one that we will accept as sufficient, please call to discuss it.

### Home Systems, Laptops, Online Accounts and Other ESI Venues

22

Though we expect that you will act swiftly to preserve data on office workstations and servers, you should also determine if any home or portable systems may contain potentially relevant data. To the extent that officers, board members or employees have sent or received potentially relevant e-mails or created or reviewed potentially relevant documents away from the office, you must preserve the contents of systems, devices and media used for these purposes (including not only potentially relevant data from portable and home computers, but also from portable thumb drives, CD-R disks and the user's PDA, smart phone, voice mailbox or other forms of ESI storage.). Similarly, if employees, officers or board members used online or browser-based email accounts or services (such as AOL, Gmail, Yahoo Mail or the like) to send or receive potentially relevant messages and attachments, the contents of these account mailboxes (including Sent, Deleted and Archived Message folders) should be preserved.

**Ancillary Preservation**

You must preserve documents and other tangible items that may be required to access, interpret or search potentially relevant ESI, including logs, control sheets, specifications, indices, naming protocols, file lists, network diagrams, flow charts, instruction sheets, data entry forms, abbreviation keys, user ID and password rosters or the like. You must preserve any passwords, keys or other authenticators required to access encrypted files or run applications, along with the installation disks, user manuals and license keys for applications required to access the ESI. You must preserve any cabling, drivers and hardware, other than a standard 3.5" floppy disk drive or standard CD or DVD optical disk drive, if needed to access or interpret media on which ESI is stored. This includes tape drives, bar code readers, Zip drives and other legacy or proprietary devices.

23

**Paper Preservation of ESI is Inadequate**

As hard copies do not preserve electronic searchability or metadata, they are not an adequate substitute for, or cumulative of, electronically stored versions. If information exists in both electronic and paper forms, you should preserve both forms.

**Agents, Attorneys and Third Parties**

Your preservation obligation extends beyond ESI in your care, possession or custody and includes ESI in the custody of others that is subject to your direction or control. Accordingly, you must notify any current or former agent, attorney, employee, custodian or contractor in possession of potentially relevant ESI to preserve such ESI to the full extent of your obligation to do so, and you must take reasonable steps to secure their compliance.

**System Sequestration or Forensically Sound Imaging**

We suggest that, with respect to ALLAN NIELSEN OR DORIS WALTERS removing their ESI systems, media and devices from service and properly sequestering and protecting them may be an appropriate and cost-effective preservation step. In the event you deem it impractical to sequester systems, media and devices, we believe that the breadth of preservation required, coupled with the modest number of systems implicated, dictates that forensically sound imaging of the systems, media and devices is expedient and cost effective. As we anticipate the need for forensic examination of one or more of the systems and the presence of relevant evidence in forensically accessible areas of the drives, we demand that you employ forensically sound ESI preservation methods. Failure to use such methods poses a significant threat of spoliation and data loss. By "forensically sound," we mean duplication, for purposes of preservation, of all data stored on the evidence media while employing a proper chain of custody and using tools and

24

methods that make no changes to the evidence and support authentication of the duplicate as a true and complete bit-for-bit image of the original. A forensically sound preservation method guards against changes to metadata evidence and preserves all parts of the electronic evidence, including in the so-called "unallocated clusters," holding deleted files.

Dated this 21st day of December 2017.

Respectfully submitted,

**The Advocacy Group**
*Attorney for Plaintiff*
333 Las Olas Way, Suite CU3-311
Fort Lauderdale, FL 33301
Telephone: (954) 282-1858
Service Email: service@advocacypa.com
By: */s/ Jessica L. Kerr*
JESSICA L. KERR, ESQ.
Fla. Bar No. 92810

25