```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION
```

KAILANI CARLSON,

       Plaintiff,

v.                           Case No:  2:18-cv-1-FtM-99MRM

SUNSHINE VILLAS HOA, INC.,
ALLAN NIELSEN, and DORIS
WALTERS,

       Defendants.

_____

**OPINION AND ORDER**

This matter comes before the Court on defendants' Motions to Dismiss Counts I and II for Failure to State a Claim (Docs. ##31, 32) filed on March 21 and 26, 2018.  Plaintiff filed a Response in Opposition (Doc. #36) on April 10, 2018.  For the reasons set forth below, the Motions are granted in part and denied in part.

**I.**

In this Fair Housing Act case, plaintiff Kailani Carlson alleges that defendants constructively denied her requested accommodation of keeping an emotional support dog at her home to alleviate her post-traumatic stress disorder (PTSD) symptoms.  On May 2, 2018, plaintiff filed a three-count Amended Complaint (Doc. #28) against defendants Sunshine Villas HOA, Inc., Allan Nielsen as treasurer of Sunshine Villas, and Doris Walters as vice president of Sunshine Villas and plaintiff's landlord.  Plaintiff

brings two claims for violation of the Fair Housing Act, 42 U.S.C. § 3604(f)(1) (Count I) and § 3704(f)(3) (Count II).  Count III alleges that Walters violated the Florida Consumer Credit Protection Act.

The Amended Complaint alleges as follows: Plaintiff has resided at the Sunshine Villas in Port Charlotte, Florida for nearly three years with her minor daughter.  (Doc. #28, ¶ 15.) Defendant Walters is the vice president of Sunshine Villas Home Owner's Association (HOA), and Defendant Nielsen is the registered agent and treasurer of the HOA.  (Id., ¶¶ 22-23.)  Walters owns the unit plaintiff resides in pursuant to a Lease Agreement entered into between them.  (Doc. #28-6.)

Plaintiff suffers from PTSD, and is supervised by doctors for the condition.  (Doc. #28, ¶ 26.)  In April 2017, due to her PTSD, plaintiff's doctors suggested that she obtain an emotional support dog.  (Id., ¶ 31.)  In early September 2017, plaintiff discussed the emotional support dog with Walters, providing Walters with a written request for an accommodation along with a letter from plaintiff's medical provider that plaintiff needed a service dog due to plaintiff's PTSD.  (Id., ¶ 33; Docs. ##28-2, 28-3.)  During the discussion, Walters did not object to the emotional support dog, only telling plaintiff to "pick up after" the dog.  (Id., ¶ 34.)

Despite Walters initial acquiescence, plaintiff received a letter from Walters dated September 26, 2017, informing plaintiff that she was not allowed to have a dog reside at the apartment because dogs are not allowed at Sunshine Villas. (Doc. #28-4.) Walters stated that she had "spoken to our manager . . . and know he will fight it." (Id.) Plaintiff believes Walters was referring to defendant Nielsen as the "manager" in the letter. After the letter, Walters began to text plaintiff for several days harassing her about the emotional support dog and threatening eviction. (Id., ¶ 39.) Plaintiff provided Walters with a second letter from her doctor stating plaintiff's medical need for an emotional support dog. (Id., ¶ 40; Doc. #28-5.)

In what plaintiff believes was retaliation for her request for a reasonable accommodation, on October 6, 2017, Walters sent plaintiff a Final Notice to Vacate, stating that since plaintiff's lease was now on a month-to-month basis, Walters was terminating the lease and ordered plaintiff to vacate the apartment by November 1, 2017. Plaintiff received the letter on October 12, 2017. (Doc. #28, ¶ 42; Doc. #28-6, p. 16.) On October 13, 2017, plaintiff paid Walters monthly rent in advance for the rental period October 15, 2017 to November 15, 2017. (Doc. #28, ¶ 41.) At this point, plaintiff retained counsel to assist her. (Id., ¶ 45.)

Walters returned the rent money to plaintiff, informing plaintiff that she only owed a half-month rent (from October 15 - November 1, 2017) because plaintiff was to vacate by November 1, 2017. (Doc. #28, ¶ 46; Doc. #28-7.) Plaintiff then received a Three-Day Notice to Pay Rent or Deliver Possession from Walters, dated October 26, 2017. (Id., ¶ 47; Doc. #28-8.) Although counsel represented plaintiff at this point, plaintiff again tried to pay Walters the full rent and notified Walters that her eviction attempts were illegal. (Doc. #28-9.)

Prior to filing suit, plaintiff's counsel contacted Nielsen at Sunshine Villas HOA and requested a policy, procedure, or information necessary for requesting a reasonable accommodation. (Doc. #28, ¶¶ 50-53.) Nielsen refused to provide any information and directed plaintiff to contact their counsel. (Id.) Plaintiff's counsel contacted defense counsel prior to filing suit, requesting a reasonable accommodation, but still prepared to file suit. (Id., ¶ 56.) On October 31, 2017, defendants' attorney notified plaintiff that she would be granted the reasonable accommodation of an emotional support dog. (Id., ¶ 57.) Plaintiff alleges that as a result of defendants' violations of the FHA prior to granting her request, plaintiff has suffered pain, emotional distress, embarrassment, and costs associated with seeking to resolve the matter. (Id., ¶ 58.) Moreover, plaintiff alleges that because she currently only has a month-to-month

tenancy at her Sunshine Village apartment, she does not feel secure in her home. (Id., ¶ 59.)

Defendants move to dismiss, arguing that plaintiff's FHA claims fail because defendants provided plaintiff with a reasonable accommodation and plaintiff still resides at the apartment with the emotional support dog. Plaintiff believes that the delay in providing the accommodation was unreasonable and unlawful under the FHA.

**II.**

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555. See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take

them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (internal citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

## III.

The FHA makes it unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling because of that person's handicap. 42 U.S.C. § 3604(f)(2). Discrimination includes refusing to make reasonable accommodations in rules, policies, practices or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling. 42 U.S.C. § 3604(f)(3)(B).

### A. Disparate Treatment, Making Unavailable or Denying a Dwelling (Count I)

Plaintiff labels Count I as "disparate treatment – denying or making a dwelling unavailable in violation of 42 U.S.C. § 3604(f)(1)" (Doc. #28, p. 11.) As a disparate treatment claim, the pleading is insufficient. "As its name suggests, a disparate treatment claim requires a plaintiff to show that he has actually been treated differently than similarly situated non-handicapped people." Schwarz v. City of Treasure Island, 544 F.3d 1201, 1216 (11th Cir. 2008). The Amended Complaint is devoid of any allegations whatsoever that Sunshine Villas treated her differently than any non-disabled individuals when they denied her request for a service dog. Nor does plaintiff allege that any non-disabled individuals were allowed to keep pets on the property while her request for a service dog was denied. Therefore, the Court will grant the Motion to the extent that plaintiff brings a claim for disparate treatment under Count I.

The situation is different with a discrimination claim. The Eleventh Circuit has stated that although "we have never expressly set forth the elements of a section 3604(f)(1) claim," in a discrimination claim "the allegations in the complaint should be judged by the statutory elements of an FHA claim rather than the structure of the prima facie case." Hunt v. Aimco Properties, Inc., 814 F.3d 1213, 1221 (11th Cir. 2016) (internal quotations

omitted). As relevant here, section 3604(f)(1) makes it unlawful to discriminate in the rental of, or to otherwise make unavailable or deny, a dwelling because of a disability of the renter or a person associated with the renter. 42 U.S.C. § 3604(f)(1). "[A] complaint must allege that the adverse action was taken because of a disability and state the facts on which the plaintiff relies to support that claim." Hunt, 814 F.3d at 1222. Defendants argue that plaintiff cannot allege that she was actually denied housing under the FHA because defendants granted her request and she remains in the apartment with the service dog.

Hunt v. Aimco Properties, Inc. is particularly instructive here. In Hunt, a mother and her son, who had Down Syndrome, were given notice to vacate their apartment after the son was accused of threatening the building's staff members and of stealing. Id. at 1219. However, before the Hunts vacated, a new management company took over and allowed them to stay. Id. at 1220. The court held that even though the old management company/defendant did not successfully evict the Hunts, the denial-of-dwelling claim against it would nonetheless survive because the company "nevertheless made the Hunts' housing unavailable by refusing to renew their lease and directing them to vacate their apartment," and the change in management did not "alter the prior discriminatory conduct." Id. at 1224. In so holding, the court noted the FHA's liberal remedial policy. Id. at 1223.

"Accordingly, we hold that the FHA protects renters not only from eviction, but also from discriminatory actions that would lead to eviction but for an intervening cause." Id.

Here, plaintiff alleges that defendants had knowledge of her disability, took adverse action against her because of her disability, and attempted to make housing unavailable to plaintiff because of her disability and request for a reasonable accommodation. Defendants attempted to evict her, served her with termination notices, and harassed her after her request. These allegations suffice to state a cause of action for denial of a dwelling. See Hunt, 814 F.3d at 1223. Contrary to defendants' assertions, the fact that plaintiff was allowed to stay in the apartment is not dispositive of her claim for damages under the FHA pursuant to the Hunt case. Defendants have not shown how defense counsel's letter allowing plaintiff to stay in the apartment would make Hunt inapplicable to this case. Therefore, the Motion to Dismiss Count I as a discrimination claim is denied.

**B. Failure to Accommodate (Count II)**

To state a claim for failure to accommodate under 42 U.S.C. § 3604(f)(3)(B), a plaintiff must allege facts which show that: "(1) he is disabled or handicapped within the meaning of the FHA, (2) he requested a reasonable accommodation, (3) such accommodation was necessary to afford him an opportunity to use and enjoy his dwelling, and (4) the defendant[ ] refused to make

the requested accommodation." Alley v. Les Chateaux Condo. Ass'n, Inc., No. 8:10-cv-760-T-33TGW, 2010 WL 4739508 at *3 (M.D. Fla. 2010) (citing Hawn v. Shoreline Towers Phase I Condo. Ass'n, Inc., 347 F. App'x 464, 467 (11th Cir. 2009)).

Defendant challenges the third element, arguing that defendants' counsel granted plaintiff's request for an accommodation. (Doc. #28, ¶ 57). Plaintiff responds that the claim survives because defendants initially denied her request without making any further inquiry or investigation in violation of the FHA, and that defendants constructively denied her accommodation request due to the unreasonable delay in granting her request.

Defendants are correct that "a plaintiff must actually request an accommodation and be refused in order to bring a reasonable accommodation claim under the FHA." Schwarz v. City of Treasure Island, 544 F.3d 1201, 1219 (11th Cir. 2008). "The FHA does not demand that housing providers immediately grant all requests for accommodation." Bhogaita v. Altamonte Heights Condo. Ass'n, Inc., 765 F.3d 1277, 1285–86 (11th Cir. 2014). "Once a provider knows of an individual's request for accommodation, the provider has an opportunity to make a final decision ..., which necessarily includes the ability to conduct a meaningful review to determine whether the FHA requires the requested accommodation." Id. at 1286. "The failure to make a timely determination after

meaningful review amounts to constructive denial of a requested accommodation, 'as an indeterminate delay has the same effect as an outright denial.'" Id. (quoting Groome Res. Ltd. v. Parish of Jefferson, 234 F.3d 192, 199 (5th Cir. 2000)). "In assessing whether a constructive denial has occurred, 'courts often consider whether the delay was caused by the defendant's unreasonableness, unwillingness to grant the requested accommodation, or bad faith, as opposed to mere bureaucratic incompetence or other comparatively benign reasons.'" Bone v. Vill. Club, Inc., 223 F. Supp. 3d 1203, 1214 (M.D. Fla. 2016) (quoting Logan v. Matveevskii, 57 F. Supp. 3d 234, 257–58 (S.D.N.Y. 2014)). "If a landlord is skeptical of a tenant's alleged disability or the landlord's ability to provide an accommodation, it is incumbent upon the landlord to request documentation or open a dialogue." United States v. Hialeah Hous. Auth., 418 F. App'x 872, 875 (11th Cir. 2011) (quoting Jankowski Lee & Assocs. v. Cisneros, 91 F.3d 891, 895 (7th Cir. 1996)).

Here, plaintiff alleges a nearly two-month delay from plaintiff's initial request to Walters on September 8, 2017, and defendants' counsel granting the request on October 31, 2017. Plaintiff further alleges that defendants' "failure to modify its existing policies and practices to accommodate the disabilities of plaintiff is discriminatory and unlawful." (Doc. #28, ¶ 93.) At this point, the Court need not determine whether defendants

constructively denied plaintiff's request. Plaintiff's allegations are sufficient to state a claim for constructive denial of her request for an accommodation.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

Defendants' Motions to Dismiss for Failure to State a Claim (Docs. ##31, 32) are **GRANTED IN PART AND DENIED IN PART.** The Motions are granted to the extent that the disparate treatment portion of Count I is dismissed without prejudice; otherwise, the Motions are denied.

**DONE and ORDERED** at Fort Myers, Florida, this __22nd__ day of May, 2018.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record